UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| GARY NEAL SADLER : | |
| : | CIVIL ACTION NO. |
| v. : | 3:07-cv-1316(CFD) |
| : | |
| THERESA LANTZ, ET AL. : | |
| : | |

## RULING ON PENDING MOTIONS

On June 25, 2009, the court considered plaintiff's motion for leave to file an amended complaint. The court granted the motion to amend to add Drs. James Smyth, Syed Naqvi, Mark Buchanan, Ricardo Ruiz and Monica Farinella as defendants and denied the motion to amend to re-assert an access to courts claim against defendants Theresa Lantz, Susan O'Storey, Adele Patterson and Preston Tisdale and dismissed all claims set forth in the amended complaint against them pursuant to 28 U.S.C. 1915(e)(2)(B)(ii). Accordingly, only claims one, two and four remain against defendants Drs. Timothy Silvis, James Smyth, Syed Naqvi, Mark Buchanan, Ricardo Ruiz and Monica Farinella, Warden Peter Murphy, Correctional Officer Matthew Stolfi and Health Services Administrator Richard Furey.[1] The defendants move to dismiss some of the claims against them. For the reasons set forth below, the motion is denied in part and granted in part.

As a preliminary matter, the defendants move to strike plaintiff's reply to their reply to plaintiff's memorandum in opposition to the motion to dismiss. The defendants contend that Rule 7(d) of the Local Civil Rules of the United States District Court for the District of

---

[1] Although the ruling dismissed all claims in the amended complaint against Commissioner Lantz and the Clerk has terminated her as a defendant, the ruling did not specifically address the claims against Lantz included in claim four of the amended complaint regarding the rejection of plaintiff's incoming correspondence. Accordingly, the court will consider those claims and the defendants' arguments that those claims should be dismissed.

Connecticut does not permit a party to file a reply brief to a reply brief. Although attorneys will generally limit the filing of a reply brief to a memorandum in response to a motion, the court will consider plaintiff's brief, considering plaintiff's pro se status.

I. **Facts**

The following allegations are from the Amended Complaint and must be deemed true for resolving the Motion to Dismiss. There are three claims remaining: claims one, two and four.

In claim one, plaintiff asserts that in May 2004, he dislocated a joint in the pinky finger on his left hand causing a bone to puncture the skin. He was able to pull the finger back into joint, but it remained painful and swollen. Plaintiff contends that a physician examined the finger, sutured the puncture wound and referred him for x-rays. The x-rays taken on June 1, 2004, revealed no abnormality. On June 10, 2004, a nurse examined plaintiff's finger, advised plaintiff that he did not need a splint and prescribed Ibuprofen for the pain. Plaintiff began to exercise his finger and take the pain medication.

When plaintiff then started to develop a burning sensation in his stomach, he contacted the medical department on June 13, 2004. On June 28, 2004, Dr. Silvis referred plaintiff for follow-up x-rays of his finger, which revealed no fracture or other abnormality.

On July 1, 2004, Dr. Silvis recommended that plaintiff continue his finger exercises, indicated that he would submit a request to the Utilization Review Committee ("URC") for an orthopaedic consultation and would issue an order for a new pain medication. Drs. Syed Naqvi, Mark Buchanan, Ricardo Ruiz, Monica Farinella and Silvis were members of the URC at that time. Plaintiff did not receive any new pain medication, but continued to

2

take Ibuprofen. In September 2004, a nurse again prescribed Ibuprofen for plaintiff's pain and referred him to see Dr. Silvis.

On October 22, 2004, Dr. Silvis informed plaintiff that he had not received a response to his request to the URC for an orthopaedic consultation. Thus, he submitted a second request to the URC for an orthopaedic consultation. On October 25, 2004, plaintiff underwent x-rays of his left finger. The x-rays revealed no fracture.

On November 4, 2004, Dr. Silvis advised plaintiff that the URC had denied his request for an orthopaedic consultation. Plaintiff appealed the decision. On February 2, 2005, Dr. Silvis examined plaintiff's finger and explained that there was nothing further he could do to treat the injury. Plaintiff continued to experience pain in his finger.

On January 1, 2006, a nurse instructed plaintiff to purchase Ibuprofen from the commissary to relieve the pain in his finger. On February 15, 2006, Dr. Silvis examined the plaintiff's finger and again informed plaintiff that he could provide no further treatment for the injury. Dr. Silvis indicated that would submit another request to the URC for an orthopaedic consultation.

On February 28, 2006, Dr. Silvis informed plaintiff that the URC had denied the request for an orthopaedic consultation and recommended alternative pain management. Plaintiff appealed this decision. Dr. Silvis did not provide an alternative to manage plaintiff's pain.

In response to an appeal of a medical grievance filed by plaintiff, Health Services Administrator Richard Furey indicated that he would schedule an appointment for plaintiff to discuss medication options with a physician. On March 30, 2006, Dr. Silvis met with plaintiff to discuss pain medication options. Dr. Silvis prescribed a new medication,

3

Dolobid.

In May 2006, plaintiff began to again experience burning pain in his stomach and advised Dr. Silvis of this symptom. On May 18, 2006, Dr. Silvis prescribed a different pain medication, Feldene. In June 2006, plaintiff complained that the new pain medication was also causing a burning sensation in his stomach. Dr. Silvis discontinued the medication and indicated that he would prescribe a different medication. On July 24, 2006, plaintiff wrote to Defendant Furey because he had not received the new pain medication. On July 27, 2006, Dr. Silvis prescribed plaintiff a new medication, Naproxen. This medication also caused the plaintiff to experience a burning sensation in his stomach and also caused pain in his chest. Plaintiff quit his Department of Corrections job in November 2006, due to the pain in his stomach and hands.

On December 7, 2006, a nurse diagnosed the plaintiff as suffering from heartburn and recommended that he take antacid tablets. On December 11, 2006, Dr. Silvis examined plaintiff, diagnosed him as suffering from acid reflux, prescribed Zantac and Mylanta for that condition and discontinued the pain medication.

The acid reflux caused plaintiff to experience throat pain, insomnia, sensitive teeth, blood in his mouth during the night and weight loss. In March 2007, Dr. Silvis submitted a request to the URC for a gastrointestinal consultation. The URC denied the request on April 3, 2007.

In response to an appeal of a medical grievance filed by plaintiff regarding the medications prescribed for his acid reflux, Health Administrator defendant Furey made a referral for a different medication, but did not address plaintiff's concerns about his diet. In May 2007, Dr. Silvis prescribed Prilosec for plaintiff's acid reflux condition. This

4

medication did not relieve the pain caused by the acid reflux.  In June 2007, Dr. Silvis submitted a second request to the URC for a gastrointestinal consultation.  In August 2007, the URC approved the request.

Plaintiff underwent testing at the University of Connecticut Medical Center ("UCONN") on August 24, 2007.  The tests revealed no esophageal or stomach abnormalities.   The physicians at UCONN recommended that plaintiff monitor what he ate, stand after eating and sleep with his head upright to help relieve the reflux.  In October 2007, Dr. Silvis examined plaintiff, reiterated the suggestions of the UCONN physicians, indicated that he would put plaintiff back on Mylanta and Zantac and attempt to get a platform for plaintiff's bed.  Dr. Silvis did not prescribe the medications or obtain the platform for the bed.

In November 2007, another physician examined plaintiff and informed him that neither a change in his diet or bed platform would help his acid reflux.  The physician prescribed a different medication to treat plaintiff's acid reflux and heal his esophagus.  In December 2007, plaintiff began to receive Zantac on a weekly basis.

In claim two, plaintiff alleges that Dr. Smyth examined his eyes in response to plaintiff's complaint of seeing a black spot out of his right eye.  The examination revealed no abnormality in either eye.  Dr. Smyth examined plaintiff again in December 2003 and May 2004 and found no abnormalities with either eye other than a condition called "floaters."  He informed the plaintiff that the condition was harmless.  Dr. Smyth examined plaintiff again in October 2005, July 2007 and February 2008 and each time indicated that plaintiff suffered from a harmless condition.

In July 2007, in response to an appeal of a grievance filed by plaintiff regarding his vision problems, Health Administrator Furey responded that Dr. Smyth had observed no changes in plaintiff's vision since 2005 and opined that a referral to a specialist would not be necessary.  As of September 2008, the blurry spot in his right eye occupied 30% of his vision and several blurry spots in his left eye occupied 20% of his vision.  He also suffered from pain and double vision in both eyes.

In claim four, plaintiff asserts that in early May 2007, a relative sent him correspondence including a blank greeting card and laminated pictures.  On May 19, 2007, plaintiff received a notification from Correctional Officer Stolfie that the correspondence had been returned to the sender because it included unauthorized enclosures.  Plaintiff filed a grievance complaining that the basis for returning the card and pictures was not appropriate.  In response to plaintiff's grievance, Warden Murphy informed plaintiff that laminated pictures were considered to be contraband and properly rejected under Administrative Directive 10.7, and that it was Department of Correction policy to return the entire correspondence package even if only part of it was unauthorized.  Defendant Wayne Choinski denied plaintiff's appeal of the grievance.

In sum, the claims concerning the treatment of plaintiff's finger (and acid reflux) and eyes allege denial of appropriate care under the Eighth Amendment, and the claim concerning his mail alleges a denial of his First Amendment rights.

## II.    Standard of Review

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, --- U.S. ----, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S.

544, 570 (2007).  There are two underlying principles to be considered when applying the "plausibility standard" to a complaint.  *Id.*  First, although "a court must accept as true all of the allegations contained in a complaint," that "tenet" "is inapplicable to legal conclusions," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. "Second, only a complaint that states a plausible claim for relief survives a motion to dismiss," and "[d]etermining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 1950.  Even after the Supreme Court's decisions in *Twombly* and *Iqbal*, a court is "obligated to construe a pro se complaint liberally."  *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009).

### III. Discussion

The defendants assert seven grounds in support of the motion to dismiss.  They argue that: (1) plaintiff has failed to properly serve the newly added defendants; (2) the statute of limitations bars portions of the medical claims; (3) the claims against Richard Furey fail to state a claim upon which relief may be granted; (4) the access to courts claims fail to state a claim upon which relief may be granted; (5) allegations regarding the adoption of a mail review regulation are barred by absolute legislative immunity and the statute of limitations; (6) collateral estoppel bars the claims for treatment of plaintiff's finger and (7) the negligence and malpractice claims are barred by the doctrines of sovereign and statutory immunity.

### A. Insufficient Service of Process

Defendants argue that Drs. James Smyth, Syed Naqvi, Ricardo Ruiz, Mark

7

Buchanan and Monica Farinella, Commissioner Theresa Lantz, Public Defenders Susan O. Storey, Adele Patterson and Preston Tisdale, who were named in the amended complaint, have not been served in their individual or official capacities. On June 25, 2009, the court dismissed all claims against Theresa Lantz, Susan O'Storey, Adele Patterson and Preston Tisdale. On August 6, 2009, counsel for the defendants filed executed Waiver of Service of Summons forms for Drs. James Smyth, Syed Naqvi, Ricardo Ruiz, Mark Buchanan and Monica Farinella in their individual capacities. On July 16, 2009, the Clerk issued a summons to enable the United States Marshal's Service to effect service of the amended complaint on defendants Drs. James Smyth, Syed Naqvi, Ricardo Ruiz, Mark Buchanan and Monica Farinella in their official capacities. The docket sheet reflects that the United States Marshal has not filed a return of service as to these defendants in their official capacities. Accordingly, the Clerk will check with the United States Marshal's Service regarding the return of service and, if necessary, issue a new summons. Thus, the motion to dismiss on the ground of insufficient service of process is denied.

    **B.**    <u>**Access to Courts Claims**</u>

As stated above, the court has dismissed the plaintiff's access to courts claim asserted in the amended complaint as well as all claims against Theresa Lantz, Susan O'Storey, Adele Patterson and Preston Tisdale. Thus, the motion to dismiss is denied as moot as to the claim of denial of access to the courts.

    **C.**    <u>**Collateral Estoppel**</u>

The defendants contend that the claims involving the injury to plaintiff's finger should be dismissed under the doctrine of collateral estoppel because plaintiff previously

litigated this claim in a state court habeas corpus action.  Plaintiff does not contest this argument.  However, the Court will address it.

The doctrine of issue preclusion, or collateral estoppel, precludes relitigation of a specific issue that has been litigated in a habeas corpus action.  *See Kulak v. City of New York*, 88 F.3d 63, 71-72 (2d Cir. 1996) (applying collateral estoppel to bar relitigation in a federal section 1983 action of issues previously decided in a state habeas proceeding). Collateral estoppel applies when "(1) the issues in both proceedings are identical, (2) the issue in the prior proceeding was actually litigated and actually decided, (3) there was [a] full and fair opportunity to litigate in the prior proceeding, and (4) the issue previously litigated was necessary to support a valid and final judgment on the merits." *Epperson v. Entertainment Express, Inc.*, 242 F.3d 100, 108 (2d Cir. 2001) (quoting *United States v. Hussein*, 178 F.3d 125, 129 (2d Cir. 1999) (internal quotation marks and citation omitted)). In addition, Connecticut has abandoned the rule of mutuality, meaning that even parties that were not actually adverse to one another in the prior proceeding may nonetheless assert collateral estoppel.  *See Aetna Cas. & Sur. So. v. Jones*, 220 Conn. 285, 300-02, 596 A.2d 414, 423-24 (1991).

In claim one plaintiff challenges the adequacy of medical care provided to him by Dr. Silvis and Health Administrator Furey for an injury to his left pinky finger that he allegedly received in a sports event at MacDougall in May 2004.  He asserts that Dr. Silvis failed to properly treat the injury and the members of the URC, Drs. Naqvi, Ruiz, Buchanan and Farinella, improperly refused to grant requests made by Dr. Silvis for an orthopaedic consultation following the injury.

Plaintiff also filed a state habeas action alleging inadequate medical treatment at MacDougall correctional facility for the same injury to his finger. *See Sadler v. Warden*, CV-04-4000199-S (Conn. Super. Ct. Aug. 9, 2004). The plaintiff acknowledged the filing of this habeas petition on page three of his amended complaint. The court takes judicial notice of the transcript of the state court hearing and oral decision denying the habeas petition which have been submitted as exhibits to the motion to dismiss. (*See* Mem. Support Mot. Dismiss, Exs. D and E.) The state court held a hearing on June 14, 2006, at which plaintiff's medical records were entered as evidence and a physician (Dr. Blanchette) and the plaintiff both testified regarding plaintiff's medical care. The state court judge issued a bench ruling denying the habeas petition and finding that the Department of Correction employees had not been deliberately indifferent to his medical needs with regard to the treatment provided by them for the injury to his finger. *See id.* The decision in the state habeas bars plaintiff from relitigating his challenge to the medical care he received for his finger injury through the date of the habeas hearing on June 14, 2006. The motion to dismiss is granted on this ground. However, any claims in the amended complaint regarding plaintiff's finger occurring after the denial of the state habeas petition remain.

The claim that the pain medications prescribed to plaintiff for the injury to his finger may have caused or contributed to his acid reflux condition is not barred by collateral estoppel as it was not raised or litigated in the state habeas petition. *See Epperson* 242 F.3d at 108 (collateral estoppel inapplicable unless identical issue "was actually litigated and [] decided" and party had "full and fair opportunity to litigate" the issue). Accordingly, the motion to dismiss is denied as to that claim.

10

D.   **Statute of Limitations**

Defendants argue that certain medical claims that occurred prior to August 24, 2004, regarding the injury to plaintiff's finger, acid reflux condition and vision problem are barred by the three year statute of limitations. The only claims as to the members of the URC, Drs. Naqvi, Ruiz, Farinella and Buchanan, during this time period pertain to the injury to plaintiff's finger. Because the court has already dismissed the claims regarding treatment of plaintiff's finger occurring prior to June 14, 2006, on collateral estoppel grounds, the court considers the statute of limitations argument only as to defendants Smyth and Silvis. In their reply to the plaintiff's response to the motion to dismiss, counsel for the defendants acknowledges the continuous course of treatment doctrine and withdraws his statute of limitations argument as to the claims against defendants Smyth and Silvis without prejudice to raising it in a motion for summary judgment. (See Reply Brief Pl.'s Mem. Opp'n Mot. Dismiss at 2.) Accordingly, the motion to dismiss on the ground of statute of limitations grounds as to plaintiff's medical claims is denied without prejudice.

E.   **Claims Against Richard Furey**

Defendants move to dismiss all claims against Health Services Administrator Richard Furey because he was not directly involved in the alleged denial of medical care. Plaintiff argues that he has sufficiently alleged involvement on the part of defendant Furey.

In an action filed pursuant to 42 U.S.C. § 1983, liability is imposed only on the official causing a constitutional violation. It is settled law in this circuit that in a civil rights action for monetary damages against a defendant in his individual capacity, a plaintiff must demonstrate the defendant's direct or personal involvement in the actions which are

11

alleged to have caused the constitutional deprivation. *See Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994).

Defendant Furey, a Health Services Administrator, is a supervisory official. Because the doctrine of respondeat superior is inapplicable in section 1983 cases, *see Blyden v. Mancusi*, 186 F.3d 252, 264 (2d Cir. 1999), supervisors are not automatically liable under section 1983 when their subordinates commit a constitutional tort. The plaintiff may establish supervisory liability by demonstrating one or more of the following criteria: (1) the defendant actually and directly participated in the alleged acts; (2) the defendant failed to remedy a wrong after being informed of the wrong through a report or appeal; (3) the defendant created or approved a policy or custom that sanctioned objectionable conduct which rose to the level of a constitutional violation or allowed such a policy or custom to continue; (4) the defendant was grossly negligent in his supervision of the correctional officers who committed the constitutional violation; or (5) the defendant was deliberately indifferent to the plaintiff's rights by failing to act in response to information that unconstitutional acts were occurring. *See Wright*, 21 F.3d at 501 (2d Cir. 1994)(citations omitted). In addition, the plaintiff must demonstrate an affirmative causal link between the inaction of the supervisory official and his injury. *See Poe v. Leonard*, 282 F.3d 123, 140 (2d Cir. 2002).

Plaintiff asserts facts and attaches exhibits to his amended complaint demonstrating that Health Administrator Furey was aware of plaintiff's gastrointestinal, vision and pain complaints through grievances and letters submitted to him by the plaintiff. In addition, although it is unclear to what degree defendant Furey held supervisory authority over the physicians treating plaintiff, he did make referrals to physicians

regarding medications, reviewed plaintiff's medical records and considered a request for a referral to a specialist. The court concludes that plaintiff has pleaded sufficient facts regarding the involvement of defendant Furey in the treatment of plaintiff's medical conditions to demonstrate supervisory liability. The motion to dismiss is denied as to defendant Furey on the ground of lack of personal involvement.

### F. Negligence Claims

The defendants contend that the claims of negligence and malpractice are barred by the doctrines of sovereign and statutory immunity. The doctrine of sovereign immunity "protects state officials and employees from lawsuits resulting from the performance of their duty ... and protects the state against lawsuits as well as protecting against liability." *Hultman v. Blumenthal*, 67 Conn. App. 613, 620, 787 A.2d 666, 672-73, *cert. denied*, 259 Conn. 929, 793 A.2d 253 (2002). Accordingly, the claims of negligence and malpractice against defendants Silvis, Naqvi, Ruiz, Farinella and Buchanan in their official capacities are barred by sovereign immunity.

Connecticut General Statutes § 4-165(a) provides: "No state employee shall be personally liable for damage or injury, not wanton, reckless or malicious, caused in the discharge of his or her duties or within the scope of his or her employment." Thus, state employees are not "personally liable for their negligent actions performed within the scope of their employment." *Miller v. Egan*, 265 Conn. 301, 319, 828 A.2d 549, 561 (2003). Furthermore, "[a]ny person having a complaint for [] damage or injury" caused by wanton, reckless or malicious conduct must "present ... [the] claim against the state" to the State Claims Commissioner who may authorize suit against the state or state official. Conn. Gen. Stat. §§ 4-160, 4-165(a). When filing a lawsuit, the plaintiff must allege that he or

she sought "authorization and the date on which it was granted...." Conn. Gen. Stat. § 4-160(c).

Plaintiff has not alleged that defendants Silvis, Naqvi, Ruiz, Farinella and Buchanan acted wantonly, recklessly, maliciously or outside the scope of their official duties in treating plaintiff's medical conditions or denying requests for further testing or examination by specialists. *See Hultman*, 67 Conn. App. at 624, 787 A.2d at 674. Furthermore, plaintiff has not asserted that he filed a claim with the State Claims Commissioner or that he received the required authorization to file suit against the State and its officials. Accordingly, plaintiff's negligence and malpractice claims against the defendants Silvis, Naqvi, Ruiz, Farinella and Buchanan their individual capacities are barred by statutory immunity under Conn. Gen. Stat. § 4-165. The motion to dismiss is granted as to any negligence and malpractice claims.

**G. Legislative Immunity**

Plaintiff alleges that defendants Murphy, Stolfie and Lantz violated his First Amendment right to receive incoming mail in May 2007, when they relied on State of Connecticut Administrative Directive 10.7F to reject correspondence from a relative that included a blank greeting card and laminated photographs. Plaintiff claims that the defendants not only improperly enforced or applied Administrative Directive 10.7, but also improperly adopted the directive. Defendants argue that the doctrine of absolute legislative immunity and the statute of limitations bars the claim that Commissioner Lantz, Officer Stolfie and Warden Murphy improperly adopted Administrative Directive 10.7.

The limitations period for filing an action pursuant to 42 U.S.C. § 1983 is three years. See Lounsbury v. Jeffries, 25 F.3d 131, 134 (2d Cir. 1994) (holding that, in

Connecticut, the general three-year personal injury statute of limitations period set forth in Connecticut General Statutes § 52-577 is the appropriate limitations period for civil rights actions asserted under 42 U.S.C. § 1983).  Defendants assert that Administrative Directive 10.7 is governed by Regulations of Connecticut State Agencies, Sections 18-81-28 through 18-81-51 and that those regulations were enacted in August 1993.  State of Connecticut Department of Correction Administrative Directive 10.7(2) reflects the fact that Regs. Conn. State Agencies §§ 18-81-28 through 18-81-51 govern that directive.  The court takes judicial notice of the regulations and administrative directive which have been submitted as exhibits to the motion to dismiss.[2]  (See Mem. Support Mot. Dismiss, Exs. B and C.)

The complaint was filed in this action on August 24, 2007, more than thirteen years after the enactment of the regulations governing Administrative Directive 10.7.[3]  The plaintiff offers no opposition to these facts.  Accordingly, the claim that defendants Lantz, Murphy and Stolfie improperly adopted Administrative Directive 10.7 is barred by the statute of limitations.  The motion to dismiss is granted as to that claim.  Because the court has dismissed this claim on statute of limitations grounds, the motion to dismiss is denied as moot on the ground of legislative immunity.

### H.    Remaining Claims Against Defendant Lantz

The only factual allegation against Commissioner Lantz in claim four is that she

---

[2] *See Christman v. Skinner*, 468 F.2d 723, 726 (2d Cir. 1972 (holding district court properly took judicial notice of New York Correctional Rules and Regulations).  468 F.2d 723 C.A.2, 1972.

[3] August 24, 2007, is the date plaintiff signed the amended complaint and presumably handed it to prison officials for filing.  See Dory v. Ryan, 999 F.2d 679, 682 (2d Cir. 1993) (pro se prisoner complaint is deemed filed as of the date the prisoner gives the complaint to prison officials to be forwarded to the court)(citing Houston v. Lack, 487 U.S. 266, 270 (1988)).

approved the Administrative Directive relied on by Warden Murphy to deny plaintiff's grievance regarding the rejection of his correspondence. Connecticut General Statutes § 18-81 expressly permits the commissioner of correction to promulgate administrative rules for Department of Correction facilities. Thus, it was within the authority of Commissioner Lantz to approve Administrative Directive 10.7. As such, plaintiff's allegation against Commissioner Lantz fails to state a claim upon which relief may be granted and is dismissed.

In his request for relief on page of the amended complaint, plaintiff states that Commissioner Lantz violated his First Amendment rights by enforcing Administrative Directive 10.7 and/or rejecting the correspondence addressed to him and/or upholding the rejection of that correspondence. This conclusory statement is not supported by factual allegations. Plaintiff does not allege or assert facts to suggest that Commissioner Lantz was involved in or aware of the enforcement or application of Administrative Directive 10.7 to the correspondence addressed to him. Nor does plaintiff allege that Commissioner Lantz issued the rejection notice or upheld the rejection of the correspondence. As the Second Circuit has observed, "it is not enough for the defendant simply to be a 'policy maker' at the time the unconstitutional events occur." *Cuoco v. Moritsugu*, 222 F.3d 99, 109 (2d Cir. 2000). Plaintiff has alleged no facts stating a plausible claim for a violation of his First Amendment rights by Commissioner Lantz. Because the plaintiff has failed to allege facts demonstrating that defendant Lantz violated his federally or constitutionally protected rights, the conclusory statements in claim four of the amended complaint against defendant Lantz are dismissed. See 28 U.S.C. § 1915(e)(2)(B)(ii); Iqbal, 129 S. Ct. at 1949 (Rule 8 "demands more than an unadorned,

the-defendant-unlawfully-harmed-me accusation.")

## IV. CONCLUSION

The Motion to Strike **[Dkt. # 104]** plaintiff's reply brief is **DENIED**. The Motion to Dismiss [**Dkt. # 59**] is **GRANTED** as to the claims challenging the medical care plaintiff received for his finger injury through June 14, 2006, the negligence and malpractice claims and the claim that defendants Lantz, Murphy and Stolfie improperly adopted Administrative Directive 10.7. The Motion to Dismiss [**Dkt. # 59**] is **DENIED** as to the claim that the pain medications prescribed to plaintiff for the injury to his finger may have caused or contributed to his acid reflux condition, the claims against defendant Furey and on the ground of insufficient service of process, **DENIED** without prejudice on the ground that the statute of limitations bars claims regarding plaintiff's vision and acid reflux conditions and **DENIED** as moot as to the claims of denial of access to the courts and on the ground that the claim that the defendants improperly adopted Administrative Directive 10.7 is barred by legislative immunity. The allegations in claim four as to defendant Lantz are **DISMISSED** pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). No claims remain pending as to defendant Lantz.

The claims in the amended complaint regarding the treatment of the injury to plaintiff's finger occurring after June 14, 2006, the claims regarding the diagnosis and treatment of plaintiff's acid reflux condition, the claims regarding plaintiff's vision problem and the claims regarding the application of Administrative Directive 10.7F to plaintiff's May 2007 incoming correspondence remain.

**SO ORDERED.**

Dated this <u>16th</u> day of September, 2009, at Hartford, Connecticut.


<u>/s/ Christopher F. Droney</u>
Christopher F. Droney
United States District Judge